UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

       Plaintiff/Respondent,

                              Civil No. 05-72434
                              Criminal No. 01-80967

vs.                              HONORABLE LAWRENCE P. ZATKOFF
                              HONORABLE STEVEN D. PEPE

D-1 DONALD SISTRUNK,

       Defendant/Petitioner.

_____/

## REPORT AND RECOMMENDATION

       Donald Sistrunk, Petitioner, filed a motion pursuant to 28 U.S.C. §2255 to set aside his guilty plea pertaining to two drug offenses.    Petitioner's motion was referred for report and recommendation under 28 U.S.C. §636(b)(1)(B).   For the reasons stated below, IT IS RECOMMENDED that Petitioner Sistrunk's motion to set aside his guilty plea be DENIED.   Because this result would not be debatable among reasonable jurists, IT IS FURTHER RECOMMENDED that pursuant to 28 U.S.C. § 2253 (c) a certificate of appealability should not issue.   *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

## I.    BACKGROUND

       The parties stipulated to the following facts in the plea agreement in the underlying criminal matter:

> On March 23, 2001, Defendant Sistrunk, while aided and abetted by a co-defendant, Richard Mapes, sold approximately 9 grams of crack cocaine from the home at 19365 Hickory, Detroit, Michigan [to] S/A Kris Griffith of the ATF.   On May 3, 2001, Defendant Sistrunk Petitioner was contacted regarding another purchase of crack cocaine.   Defendant Sistrunk was met by S/A Griffith at 14216 Seymour, Detroit, Michigan.   Sistrunk delivered crack cocaine to S/A Griffith which weighed

100.5 grams in exchange for $3,600.00.

(Dkt. #40, p. 3 – Plea Agreement).

On June 25, 2002, a First Superseding Indictment was filed charging Petitioner with one count of Distribution of Cocaine Base, 5 grams or more, Title 21 U.S.C. 841(a)(1) and one count of Distribution of Cocaine Base, 50 grams or more, Title 21 U.S.C. 841(a)(1) (Dkt. 69, Exh. A - First Superseding Indictment).  On December 4, 2002, a §851 Information notice was filed pursuant to Title 21 U.S.C. §841(a), 841(b) and 851, advising Petitioner of the government's intention to seek sentence enhancements based on his two prior felony drug convictions from 1991 and 1994 (Dkt. # 21).  As a result of his previous convictions, Petitioner faced a mandatory minimum sentence of 10 years on count I and mandatory life imprisonment on count III (*id.*).

On Monday, May 19, 2003, Petitioner appeared with counsel, Timothy Barkovic, before Judge Zatkoff to enter a guilty plea without the benefit of a Rule 11 plea agreement, to the charges against him. (Dkt. # 69, Exh. C, pp. 3 and 12).  Petitioner's counsel and the government mistakenly advised the court, that  Petitioner faced a 20 year mandatory minimum and a sentence of "up to life". (*id.* at Exh. C, p. 4).  The court accepted Petitioner's plea of guilty (*id.* at Exh. C, p. 19).

Following the plea, a pre-sentence report was filed and it was determined by the probation department that Petitioner faced a potential sentence of mandatory life imprisonment based on his prior record and the sentencing enhancement under Title 21 U.S.C. 841(a)(1). Sentencing was scheduled for August 7, 2003.  On August 6, 2003, Petitioner's then attorney, Timothy Barkovic filed a motion to withdraw guilty plea and a motion to withdraw as Petitioner's attorney (Dkt. ##

2

28 and 29).[1]  On August 7, 2003, Judge Paul Borman, acting for Judge Zatkoff, entered an order issuing a warrant and revoking Petitioner's bond due to his failure to appear at sentencing (Dkt. # 30).

On January 22, 2004, Petitioner appeared for a hearing at which the court granted Mr. Barkovic's motion to withdraw as counsel and appointed a new attorney (Dkt. #69, Exh. D, pp. 6-7). At that same hearing, the court denied Petitioner's motion to withdraw his guilty plea (*id*. at Exh. D, p. 7). On April 22, 2004, Petitioner, through new counsel, Joseph Niskar, filed a motion to withdraw his guilty plea (Dkt. #36), which was granted on May 3, 2004 (Dkt. # 38).

On May 27, 2004, pursuant to a Fed. R. Crim. P. 11 agreement with the government (the "Plea Agreement"), Petitioner again plead guilty to the two counts of Delivery of Cocaine Base pending against him in the First Superseding Indictment (Dkt. #40 – Plea Agreement; Dkt. #69, Exh. G – Plea Hearing Transcript).  The Plea Agreement provided, among other things, that the government would request the withdrawal of the 21 U.S.C. §851 sentencing enhancement information it had filed and "It is exclusively within the government's discretion to determine whether defendant has provided substantial assistance.  Upon the government's determination that defendant's cooperation amounts to substantial assistance ... the government will seek either a downward departure at sentencing under U.S.S.G. § 5K1.1 or a reduction of sentence pursuant to Fed. R. Crim. P. 35 as appropriate."  (Dkt. #40, pp. 2 and 9).  The Plea Agreement further indicated that "worksheets" that were attached to the Plea Agreement represented the parties stipulation

---

[1] The motion to withdraw alleges that Petitioner failed to attend appointments with Mr. Barkovic; sent the court correspondence indicating that he wished to withdraw his guilty plea because he had not understood the plea, for which he blamed Mr. Barkovic; and discharged Mr. Barkovic (Dkt. #29).

regarding the sentencing guideline provisions that applied to Petitioner (*id.* at p. 4). The worksheets attached to the Plea Agreement show that Petitioner had a total offense level of 29 and a criminal history category of IV, but was subject to an enhancement for career offender status which provided a minimum offense level of 34 and a criminal history category of VI (*id.* at p. 17). Petitioner was therefore subject to 262-327 months imprisonment (*id.*). Petitioner and his counsel signed the Plea Agreement on May 27, 2004 (*id.* at p. 12).

Upon entry of the plea on May 27, 2004, the Court found Petitioner competent to proceed with the plea (Dkt. #69 at Ex. G, p. 6). The court provided Petitioner and his attorney with the copy of the Plea Agreement that the government had marked as an exhibit and confirmed, among other things, that Petitioner had reviewed the agreement with his attorney (*id.* at Exh. G, p. 14), that he understood the possible penalties (*id.* at Exh. G, p. 14), that he was advised that he was waiving his appellate rights (*id.* at Exh. G, p. 14). Counsel for the government indicated on the record that the Plea Agreement contemplated that the sentencing guidelines for the crimes to which Petitioner was pleading were 262 to 327 months, and recommended that Petitioner receive no more than 327 months (*id.* at Exh. G, p. 14).

On June 10, 2004, Petitioner attended the sentencing hearing with his counsel, Mr. Niskar (Sentencing Transcript, attached as Exhibit A, p. 1). At the sentencing hearing Petitioner was again asked if he wished the court to accept the Plea Agreement and he responded "Yes" (*id.*). Mr. Niskar indicated that the sentencing guideline range was mandatory in Petitioner's case because of his two prior felony drug offenses and that his criminal history category was VI and his offense level was "mandated to be a 34" (*id.* at p. 3). Mr. Niskar moved the court to give Petitioner a downward departure based on his status as a "middle man" in the relevant drug deals. The court denied this

4

motion and asked Petitioner if he had anything to say on his own behalf, to which he responded "No" (*id.* at 6-7. The court sentenced Petitioner to 262 months incarceration, 5 years supervised release and a $200 fine (*id.* at pp. 8-9; Dkt. #42).

Petitioner did not file a direct appeal and filed this motion to vacate his sentence on June 20, 2005 (Dkt. #67).

**II.    ANALYSIS**

> **A.    *Standard of Review Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA)***

A prisoner seeking relief under § 2255 "must allege as a basis for relief: (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *Mallett*, 334 F.3d at 496-97 (citation omitted). Where the petitioner's motion alleges a non-constitutional error, the petitioner must establish a " 'fundamental defect which inherently results in a complete miscarriage of justice,' or, an error so egregious that it amounts to a violation of due process." *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir.1990)).

In a §2255 motion, a petitioner has the burden of sustaining his contentions by a preponderance of the evidence. *Wright v. United States*, 624 F.2d 557, 558 (5th Cir.1980).

A petitioner is procedurally barred from raising claims in a § 2255 motion, even those of constitutional magnitude, to which no contemporaneous objection was made or which were not presented on direct appeal. *Frady*, 456 U.S. at 167-68; *Nagi v. United States*, 90 F.3d 130, 134 (6th Cir.1996). Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in a motion under §2255 only if the defendant first demonstrates either cause for the default and actual prejudice or that he is actually innocent. *Bousley v. United*

*States*, 523 U.S. 614, 622 (1998). The procedural default rule does not apply, however, to claims of ineffective assistance of counsel. Claims of ineffective assistance of trial counsel generally are not reviewable on direct appeal, because the record may be inadequate to permit review. *See United States v. Kincaide*, 145 F.3d 771, 785 (6th Cir.1998); *United States v. Tucker*, 90 F.3d 1135, 1143 (6th Cir.1996). Consequently, such claims may be raised for the first time in a § 2255 proceeding, without regard to a failure to raise them on direct appeal. *See Tucker*, 90 F.3d at 1143; *United States v. Allison*, 59 F.3d 43, 47 (6th Cir.1995).

In an action to vacate or correct the sentence, a court is required to grant a hearing to determine the issues and make findings of fact and conclusions of law "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief...." 28 U.S.C. §2255. Yet, the statute "does not require a full blown evidentiary hearing in every instance.... Rather, the hearing conducted by the court, if any, must be tailored to the specific needs of the case, with due regard for the origin and complexity of the issues of fact and the thoroughness of the record on which (or perhaps, against which) the section 2255 motion is made." *Smith v. United States*, 348 F.3d 545, 550-51 (6th Cir.2003) (*quoting United States v. Todaro*, 982 F.2d 1025, 1030 (6th Cir.1993)). No evidentiary hearing is required if the petitioner's allegations "cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Engelen v. United States*, 68 F .3d 238, 240 (8th Cir.1995), quoted in Arredondo v. United States, 178 F.3d 778, 782 (6th Cir.1999). In sum, where the motion is inadequate on its face or, although facially adequate, is conclusively refuted by the files and records of the case, a hearing is not necessary. 28 U.S.C. §2255; *Neal v. United States*, No. 94-2416, 1995 WL 325716, at *2 (6th Cir. 1995)(citing *United States v. Carbone*, 880 F.2d 1500, 1502 (1st Cir.1989)).

**B.      The Effectiveness of Petitioner's Counsel**

The Supreme Court has established a two prong test for determining whether counsel's

performance was ineffective for Sixth Amendment purposes:

> First, the defendant must show that counsel's performance was deficient. This
> requires showing that counsel made errors so serious that counsel was not
> functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.
> Second, the defendant must show that the deficient performance prejudiced the
> defense. This requires showing that counsel's errors were so serious as to deprive the
> defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes
> both showings, it cannot be said that the conviction . . . resulted from a breakdown
> in the adversary process that renders the result unreliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984).

In the case where a defendant is seeking to set aside their guilty plea the "second, or

'prejudice,' requirement, ... focuses on whether counsel's constitutionally ineffective performance

affected the outcome of the plea process. In other words, in order to satisfy the 'prejudice'

requirement, the defendant must show that there is a reasonable probability that, but for counsel's

errors, *he would not have pleaded guilty and would have insisted on going to trial*." *Hill v.*

*Lockhart*, 474 U.S. 52, 59 (1985)(emphasis supplied).

The standard to be applied is not that of a hypothetical perfect counsel, but that of reasonably

effective counsel under prevailing professional norms. *Strickland*, *supra*, 466 U.S. at 687-88. The

fundamental test of effective assistance of counsel is whether counsel "bring[s] to bear such skill and

knowledge as will render the trial a reliable adversarial testing process." *Id.*

When evaluating counsel's performance under the *Strickland* test, the Sixth Circuit has

emphasized that "[a] reviewing court must give a highly deferential scrutiny to counsel's

performance. . ." *Ward v. United States*, 995 F.2d 1317, 1321 (6th Cir. 1993). This is based on the

well-established principle that legal counsel is presumed competent. *United States v. Osterbrock*,

7

891 F.2d 1216, 1220 (6th Cir. 1989), *aff'd without opinion*, 972 F.2d 348 (6th Cir. 1992), *cert. denied*, 507 U.S. 917 (1993).  As the Court in *Strickland* stressed:

> it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.   A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.  Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.

466 U.S. at 689.

"The reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential."  *Kimmelman v. Morrison*, 477 U.S. 365, 384 (1986).  A fair assessment of Petitioner's counsel's performance requires that every effort be made to eliminate the distorting effects of hindsight, so as to reconstruct the circumstances of his challenged conduct, and to evaluate the conduct from his perspective at the time.  *Stickland*, *supra*, 466 U.S. at 689.

Petitioner argues that, in May 2004, when he entered into the Plea Agreement, his attorney should have anticipated the Supreme Court's 2005 holding in *U.S. v. Booker*, 543 U.S. 220 (2005), based on the Court's previous decision in *Apprendi v. New Jersey*, 530 U.S. 466 (2000) and the Court's subsequent decision in *Blakely v. Washington*, 542 U.S. 296 (2004)(decided June 2004).

> Under [Petitioner's] theory, Counsel also would have had to have anticipated that this Circuit's future *en banc* decision in *United States v. Koch*, 383 F.3d 436 (6th Cir. [August] 2004), which upheld the mandatory nature of the Sentencing Guidelines after the decision in *Blakely*, would eventually be overruled by *Booker*.
> Although the Court in *Booker* stated that its holding would apply to all cases on direct review, such as [Petitioner's], the Court further observed that not every appeal

8

of a sentence under a mandatory Guidelines regime would lead to a new sentencing hearing. *Booker,* 125 S.Ct. at 769.

It is only by virtue of [the Sixth Circuit's] interpretation of *Booker* in *United States v. Barnett*, 398 F.3d 516 (6th Cir. 2005), that [Petitioner] might be entitled to resentencing, were it not for his waiver of his right to appeal his sentence.  In *Barnett*, [the Sixth Circuit] established a presumption that any pre-Booker sentencing determination constitutes plain error because the Guidelines were then mandatory. *Barnett*, 398 F.3d at 526-29.

*U.S. v. Burgess*, 142 Fed. Appx. 232, 240-241, 2005 WL 1515327,*8 (6th Cir. 2005).

Here, as in *Burgess,* "[a]s a matter of law, there simply is no basis for [Petitioner's] assertion that his counsel's failure to predict this novel line of authority 'fell below an objective standard of reasonableness.' *Strickland*, 466 U.S. at 687-88, 104 S.Ct. 2052; *see also Jones v. Barnes*, 463 U.S. 745, 751-54, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983) (holding that counsel has no obligation to raise every possible claim); *Fuller v. United States*, 398 F.3d 644, 651 n. 4 (7th Cir. 2005) (noting in dictum that any argument that trial counsel was ineffective for failing to anticipate *Blakely* and *Booker* would not be tenable)." *Burgess*, 142 Fed. Appx. at 241; *see also U.S. v. Bradley*, 400 F.3d 459, 465 (6th Cir. 2005), *cert denied* 126 S.Ct. 145 ("Simultaneous waivers of the right to appeal by two parties to a plea agreement, as here, would amount to little if future changes in the law permitted the benefitted party nonetheless to appeal. One does not foretell much in predicting future changes in criminal law. And one foretells even less in predicting that those changes will benefit one side of a criminal case or the other.").  Therefore Petitioner's claim of constitutionally ineffective counsel should be rejected.

It also is important to note that Petitioner has not actually alleged that he was sentenced above the then-mandatory statutory maximums for the crimes to which he plead guilty, or that he would have proceeded to trial had Mr. Niskar informed him of the pending *Booker* decision.  He argues instead that the district court judge made a judicial determination that his criminal history

gave him career offender status in calculating his sentence and that post-*Booker* he would have been entitled to resentencing on that ground had he not waived his right to appeal. Yet, because Petitioner stipulated to his status as a career offender in the Plea Agreement, Petitioner's "sentence does not raise any of the due process or Sixth Amendment concerns that precipitated the holdings in *Apprendi*, *Blakely*, or *Booker*, which involved judge-imposed sentences above the sentences that were authorized solely by a jury verdict or the facts *admitted by the defendant*. Thus, even assuming that [Petitioner's] counsel was in a position to argue about the potential unconstitutional application of the Sentencing Guidelines, that argument had no application (and therefore no merit) in [this] case." *Burgess,* 142 Fed. Appx. at 240.

Therefore, there was no prejudice stemming from Mr. Niskar's failure to raise the argument. Much like defense counsel in *Burgess*, Mr. Niskar would have had to have convinced the government (in negotiating a plea agreement) and/or the court that Petitioner should be sentenced as if the Guidelines were advisory, even though there was no apparent threat to Petitioner's Sixth Amendment rights in considering his criminal history. Yet, there was no reasonable probability that such an argument would have been successful given that no other court had adopted it at that time. *See Williams v. Taylor,* 529 U.S. 362, 391, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) ("To establish prejudice he 'must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' ") (quoting *Strickland,* 466 U.S. 668, 694); *Burgess,* 142 Fed. Appx. at 240.

Further, had Mr. Niskar had the foresight to predict the outcome of *Booker* and thus cautioned Petitioner against waiving his right to an appeal and had the government then agreed to enter into a plea agreement without the appeal waiver, it is unlikely that Petitioner would have

10

successfully raised the issue of his career offender status on appeal:

> First, every federal court that has addressed *Booker'* s retroactivity – including the Sixth Circuit – has held that *Booker* does not apply retroactively to federal defendants whose convictions were final at the time of the Supreme Court's pronouncement. *See, e.g., Humphress v. United States,* 398 F.3d 855 (6th Cir.2005); *Lloyd v. United States,* 407 F.3d 608 (3d Cir.2005); *United States v. Price,* 400 F.3d 844 (10th Cir.2005); *In re Anderson,* 396 F.3d 1336 (11th Cir.2005). Petitioner's conviction and sentence became final before the Supreme Court's January 2005 decision in *Booker. See Sanchez-Castellano v. United States,* 358 F.3d 424, 428 (6th Cir.2004)(providing that, where a federal criminal judgment is not appealed, it becomes final ten days after it is entered). Second, even if *Booker* applied to Petitioner's collateral attack on his sentence, "the Supreme Court has uniformly excepted 'the fact of a prior conviction' from its general rule that sentence-enhancing facts must be found by a jury and proved beyond a reasonable doubt." *United States v. Beasley,*-F.3d-, 2006 WL 845564, at 4 (6th Cir. April 3, 2006)(quoting *Booker,* 543 U.S. at 244, 125 S.Ct. at 756; *Apprendi,* 530 U.S. at 490, 120 S.Ct. at 2362-63). Thus the Sixth Circuit has held that a defendant's constitutional rights are not violated when the district court determines the fact and nature of a defendant's prior convictions and uses these findings to impose an increased sentence.

*Camp v. U.S.*, 2006 WL 903613, *2 (E.D. Mich. 2006).

Therefore, Petitioner's ineffective assistance of counsel argument fails to satisfy either prong of the *Strikland* test and should be denied.

## C.   *The Government's Alleged Breach of the Plea Agreement*

The Plea Agreement provides as follows:  "It is exclusively within the government's discretion to determine whether defendant has provided substantial assistance.  Upon the government's determination that defendant's cooperation amounts to substantial assistance ... the government will seek either a downward departure at sentencing under U.S.S.G. § 5K1.1 or a reduction of sentence pursuant to Fed. R. Crim. P. 35 as appropriate." (Dkt. #40, p. 9).

*United States v. Benjamin*, 138 F.3d 1069 (6th Cir.1998), distinguished plea agreements like Petitioner's where the government "reserves discretion to determine whether [a] motion [for a sentence reduction] is appropriate," from plea agreements where the government "bargain [s] away

11

its discretion and simply promise[s] to make the ... motion." *Id.* at 1073-74.  In the latter type of agreement the government is obligated to seek a reduced sentence unless it can satisfy the district court that the defendant breached the agreement.  With an agreement of the former type, the government's decision not to move for a reduction is reviewable only "to determine whether the refusal is based on unconstitutional considerations, such as the defendant's race." *Id.* at 1073 (citing *Wade v. United States*, 504 U.S. 181, 185-86 (1992)); *see United States v. Moore*, 225 F.3d 637, 641 (6th Cir.2000) ("[W]hen a plea agreement allocates complete discretion to the government to consider whether a substantial assistance motion should be filed, we may only review the government's decision for unconstitutional motives").

Petitioner has not alleged that any unconstitutional consideration motivated the government's decision not to seek a reduction in his sentence.  Therefore the decision not to seek a sentence reduction is not reviewable.  *See Moore*, 225 F.3d at 641;  *U.S. v. Henderson*, 135 Fed. Appx. 858, 861 (6th Cir. 2005); *U.S. v. Hronek*, 95 Fed. Appx. 827, 830 (6th Cir. 2004).

Furthermore, as stated above, Petitioner is procedurally barred from raising claims in this §2255 motion, even those of constitutional magnitude, to which no contemporaneous objection was made or which were not presented on direct appeal.  *Frady*, 456 U.S. at 167-68; *Nagi v. United States*, 90 F.3d 130, 134 (6th Cir.1996).  It is undisputed that Petitioner made no objection at his sentencing and has filed no direct appeal regarding the alleged breach of the Plea Agreement.  As noted above, where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in a motion under §2255 only if the defendant first demonstrates either cause for the default and actual prejudice or that he is actually innocent.  *Bousley v. United States*, 523 U.S. 614, 622 (1998).  Plaintiff has not alleged cause and actual prejudice nor that he is

12

innocent.

The government failed to raise Petitioner's default, but the court is "not required to review the merits of defaulted claims simply because the Government has failed to raise the issue." *Elzy v. U.S.*, 205 F.3d 882, 886 (6th Cir. 2000). While procedural default is not a jurisdictional bar to review of such a claim, *see Trest v. Cain*, 522 U.S. 87 (1997), and the government's failure to raise the default may operate as a forfeiture of its right to defend on that ground, *see id.*, the court may nonetheless raise these issues *sua sponte*. *Id.* (citing *Rosario v. United States*, 164 F.3d 729, 732-33 (2d Cir.1998) (holding that appellate court may raise issues of default *sua sponte* where necessary to protect, *inter alia*, the finality of federal criminal judgments); *Hines v. United States*, 971 F.2d 506, 508 (10th Cir.1992) (holding that because concerns of finality of criminal judgments, judicial economy and orderly administration of justice substantially implicate important interests beyond those of the parties, an appellate court may raise *Frady* defense *sua sponte*)).

If offered the chance to provide further information, Petitioner may argue that the waiver of appeal in the Plea Agreement effectively barred him from pursuing this claim on direct appeal.[2] Yet, the Sixth Circuit has held that the government's alleged breach of a plea agreement may not be raised for the first time in a §2255 motion without regard to the law of procedural default. *Elzy*, 205 F.3d at 886-887. And, while *Elzy* did not involve a defendant that had waived his appeal rights, it has been held that if the government has breached or elected to void a plea agreement, "the defendant

---

[2]Ineffective assistance of counsel can be considered sufficient cause for failing to file an appeal. *McFarland v. Yukins*, 356 F.3d 688, 699 (6th Cir.2004). Yet, Petitioner did not allege that Mr. Niskar was ineffective for his failure to file an appeal, nor that he was even involved with post-sentencing matters. Further, because Petitioner's ineffective assistance of counsel claim has been found to be without merit, it is not addressed as a possible cause for failing to properly appeal.

13

is necessarily released from an appeal waiver provision contained therein." *United States v. Gonzalez*, 309 F.3d 882, 886 (5th Cir.2002); *United States v. Moscahlaidis*, 868 F.2d 1357 (3d Cir.1989)("Finally, we note that a defendant who signs an appellate waiver may nonetheless appeal if the government breaches its obligations under the plea agreement."); *U.S. v. Cantrell*, 1996 WL 403114, *2 (6th Cir. 1996) (We will not force Cantrell to adhere to his waiver of appeal if the other parties violated the agreement.). Therefore, Petitioner, if he believed the government did not honor its part of the plea agreement, was free to bring the breach claim on direct review and his failure to do so could be considered procedurally defaulted upon the court's *sua sponte* consideration. Because the claim lacks substantive merit, the undersigned did not request additional briefing on this issue from Petitioner and makes this recommendation for denial of this claim based on the merits.

### III.    RECOMMENDATION

For the reasons stated above, IT IS RECOMMENDED that Petitioner Sistrunk's motion under 28 U.S.C. §2255 to set aside his guilty plea be DENIED. Because this result would not be debatable among reasonable jurists, IT IS FURTHER RECOMMENDED that pursuant to 28 U.S.C. § 2253 (c) a certificate of appealability should not issue. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Any objections to this Report and Recommendation must be filed within ten (10) days of its service. 28 U.S.C. § 636(b)(1); E.D. Mich. LR 72.1(d)(2). Failure to file objections within the specified time constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Ivey v. Wilson*, 832 F.2d 950, 957-58 (6th Cir. 1987); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing

14

party may file a response.  The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.


Dated: May 30, 2006                             s/Steven D. Pepe
Ann Arbor, Michigan                          United States Magistrate Judge

Certificate of Service

        I hereby certify that a copy of this Report and Recommendation was served upon the parties of record by electronic means and/or U. S. Mail on May 30, 2006.

                                                s/William J. Barkholz
                                                Courtroom Deputy Clerk